# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BLUEFIELD DIVISION

| | |
|---|---|
| **LINDA HUNSUCKER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO. 1:05-0861** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. This case is presently pending before the Court on Plaintiff's Motion for Remand (Doc. No. 11.) and Defendant's Motion for Judgment on the Pleadings. (Doc. No. 13.) Both parties have consented in writing to a decision by the United States Magistrate Judge.

The Plaintiff, Linda Hunsucker (hereinafter referred to as "Claimant"), filed applications for DIB and SSI on March 25, 2003, (protective filing date), respectively, alleging disability as of May 31, 1999, due to vertebrogenic disorder, depression, and anxiety. (Tr. at 22, 74, 75-77, 116, 318-30.) The claim was denied initially and upon reconsideration.[1] (Tr. at 45-48, 51-53, 332-36, 338-41.) On

---

[1] Claimant filed a prior application for SSI benefits on November 15, 1999, alleging disability as of October 1, 1980. (Tr. at 30.) The claim was denied initially and upon reconsideration. (*Id.*) Upon Claimant's request, an administrative hearing was held on September 29, 2001, before the Honorable Charles R. Boyer. (*Id.*) By decision dated October 19, 2001, the ALJ determined that Claimant was not entitled to benefits. (*Id.*) The ALJ's decision became the final decision of the Commissioner on April 26, 2002, when the Appeals Council denied Claimant's request for review. (Tr. at 23.) Claimant sought no further action. Accordingly, the ALJ found that the doctrine of *res*

March 5, 2004, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 55.) The hearing was held on February 3, 2005, before the Honorable Brian P. Kilbane. (Tr. at 342-75.) By decision dated May 26, 2005, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 22-28.) The ALJ's decision became the final decision of the Commissioner on September 22, 2005, when the Appeals Council denied Claimant's request for review. (Tr. at 4-6.) On October 28, 2005, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2004). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the

---

*judicata* barred consideration of Claimant's disability status prior to October 20, 2001, one day subsequent to the prior decision, through the date of the current decision. (Tr. at 23.)

claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2002). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to,

3

chronic mental disorders, structured settings, medication and other treatment.
(2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
(4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[2] Fourth, if the claimant's impairment(s) is/are

---

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change

4

deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 23.) Under the second inquiry, the ALJ found that Claimant had a vertebrogenic disorder, which was a severe impairment. (Tr. at 24.) At the third inquiry, the ALJ concluded that Claimant's impairment did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 24.) The ALJ then found that Claimant had a residual functional capacity for light level work with occasional stooping, bending,

---

in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

kneeling, crouching, crawling, and climbing stairs or ladders but never climbing ropes or scaffolds. (Tr. at 25.) At step four, the ALJ found that Claimant could not return to her past relevant work. (Tr. at 26) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ nonetheless concluded, that Claimant could perform jobs such as a cashier, shipping and receiving clerk, and an assembly processor at the light level of exertion. (Tr. at 26.) On this basis, benefits were denied. (Tr. at 26-27.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on November 26, 1958, and was 46 years old at the time of the

administrative hearing. (Tr. at 22, 26, 75, 318, 345.) Claimant had a ninth grade education and a Generalized Equivalency Diploma, and received training as a certified nurse assistant. (Tr. at 22, 122, 346-347, 350.) In the past, she worked as a nurse assistant and laborer. (Tr. at 22, 133-35, 346-50, 368-69.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to sustain his burden of proof at step five of the sequential analysis by establishing that there was other work in the national economy that Claimant could perform. (Pl.'s Br. at 2-7.) Claimant first argues that the Commissioner failed to meet his burden because the VE's testimony with regard to the exertional level of the shipping and receiving clerk position was inconsistent with that of the Dictionary of Occupational Titles ("DOT"). (Id. at 4-5.) Second, Claimant argues that the "assembly processor" position as stated by the ALJ, is not a specific job under 20 C.F.R. § 404.1520(f), and therefore, the Commissioner did not meet his burden of establishing that such job existed. (Id. at 5-6.) Finally, Claimant argues that neither the ALJ nor the VE "delineated" between a Cashier I and Cashier II job and failed to discuss how her impairment may impact her ability to reach, stand, or perform any other bodily movement. (Id. at 6-7.) The Commissioner asserts that these arguments are without merit and that substantial evidence supports the ALJ's decision. (Def.'s Br. at 7-12.)

Step Five Analysis.

1. Cashier.

The Court first addresses Claimant's argument with regard to the Cashier position. Claimant asserts that the DOT identifies both a Cashier I and a Cashier II job. (Pl.'s Br. at 6.) According to Claimant, the Cashier I job is classified under the DOT as sedentary in exertion, requires frequent lifting, and requires activity involving lifting, carrying, pushing, pulling, or otherwise moving objects from one to two thirds of an eight-hour workday. (Id.) She asserts that the Cashier II job is classified as light in exertion and also requires frequent reaching. (Id.) Claimant argues that the ALJ failed to "delineate" between the two Cashier jobs, and therefore, she is unable to determine "if the numbers available are light and which are sedentary." (Id.) She further argues that the ALJ failed to address how her severe vertebrogenic disorder impacts her ability to reach, stand, or perform any other bodily movement, as required by the Cashier job. (Id.) Citing Dinan v. Apfel, 2000 WL 1372874 (M.D. Penn. 3-3-00), Claimant argues that "other ALJ's have found" that a vertebrogenic disorder is so severe that the claimant is limited to performing sedentary work. (Id.) With regard to Claimant's alleged inability to reach, the Commissioner asserts that the evidence of record did not support any limitation in her ability to reach and that the ALJ's RFC assessment is supported by substantial evidence of record. (Def.'s Br. at 9.) The Commissioner further asserts that although the ALJ did not "delineate" between the two Cashier jobs, the VE testified as to the number of cashier jobs available in the national and regional economies as performed at the light exertional level. (Id. at 10.) Thus, there is no "confusion" as to the number of light cashier jobs available, and therefore, the Commissioner satisfied his burden of proof.

"RFC represents the most that an individual can do despite his or her limitations or

restrictions." See Social Security Ruling ("SSR") 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2004). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

The RFC determination is an issue reserved to the Commissioner. See 20 C.F.R. §§ 404.1527(e)(2); 416.927(e)(2)(2004).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

After reviewing and considering the evidence of record, the ALJ concluded that Claimant retained the RFC to perform light work that does not require more than occasional stooping, bending, kneeling, crouching, crawling, and climbing stairs and ladders, or any climbing ropes or scaffolds. (Tr. at 25.) In determining Claimant's RFC, the ALJ considered the medical evidence of record and evidence of Claimant's activities, including her testimony at the administrative hearing. (Id.) Addressing first the medical evidence, the Court finds that the record does not support the severity of Claimant's alleged limitations in reaching, standing, and performing other bodily

9

movement. With regard to reaching, the record contains the opinions of two state agency physicians, which do not identify any limitations in Claimant's ability to push, pull, reach, or perform any other manipulative activities. (Tr. at 25, 242-49, 284-91.) Despite some complaints of neck, shoulder and upper back pain, Claimant's neurological exams of her upper extremities were normal, with normal muscle strength and ranges of motion and only mild tenderness of the upper back. (Tr. at 184, 199, 237, 278, 282.) Claimant reported to her treating physician that her upper back pain was significantly reduced with prescription medications. (Tr. at 278.) Other than a few references in 1999 to limited ranges of motion at her waist, including side-to-side movements on one occasion (Tr. at 200.), there is no indication that her ability to reach was limited by her vertebrogenic condition. Despite her complaints of neck, shoulder, and upper back pain, Claimant continued to perform light household chores such as vacuuming and laundry on a daily basis. (Tr. at 273, 276.)

With regard to standing, the record contains several references to Claimant's reports that her back pain was worse with prolonged standing. (Tr. at 177, 188, 212, 274, 277.) However, Claimant reported that she wore a back brace and used a TENS unit which provided pain relief. (Tr. at 273-78.) Although medical records indicate that Claimant had reduced ranges of motion of her right lower extremity and back, with reduced muscle strength of her right lower extremity on several occasions (Tr. at 210, 271, 275-78, 282.), the evidence does not support a finding that Claimant was unable to stand to perform light exertional work. The state agency physicians opined that Claimant had only occasional postural limitations and reduced her RFC to light exertional work to accommodate her low back pain and decreased ranges of motion in her back and lower extremities. (Tr. at 25, 242-49, 284-91.) The record did not contain a more restrictive RFC assessment. Additionally, the VE testified that the Cashier job allowed for a sit/stand option. (Tr. at 371.)

Claimant testified that she was able to do laundry, prepare meals, wash dishes, clean up after her son, make beds, and vacuum, with occasional breaks and while wearing a back brace and a TENS unit, if needed. (Tr. at 24, 357-66.) She further testified that she believed she could not work an eight hour workday because she wore a brace and a TENS unit. (Tr. at 367.) However, she also testified that her back pain, on a scale of one to ten, was at a level two or three with pain medication and a TENS unit. (Tr. at 355.) After observing Claimant's demeanor, and reviewing all the evidence of record, the ALJ determined that Claimant's credibility was "only fair." (Tr. at 25.)

Based on the foregoing, the Court finds that the ALJ adequately considered any functional limitations resulting from Claimant's severe impairment and that his RFC assessment is supported by substantial evidence. Although other ALJs may have concluded that claimants' vertebrogenic disorders resulted in the performance of only sedentary work, such decisions were based on individual assessments of the evidence before them. The record in this case contains no support for the severity of Claimant's alleged reaching and standing limitations which would prevent her from performing a cashier job. The Court further finds no error in the ALJ's and the VE's failure to specify which cashier job Claimant was able to perform, either Cashier I or Cashier II as stated in the DOT. The VE testified that Claimant was able to "work as a cashier, unskilled, at the light exertional level." (Tr. at 26, 369.) He further testified that more than 900,000 cashier jobs existed in the national economy and more than 32,000 existed in the regional economy of Virginia and West Virginia. (Id.) On questioning by Claimant's counsel, the VE reiterated that the cashier job was performed at the light exertional level. (Tr. at 370.) The Court agrees with the Commissioner and finds that the ALJ's failure to identify the specific DOT job is not error because the VE testified that the job was performed at the light exertional level. Claimant's argument therefore, is without merit

and the ALJ's decision is supported by substantial evidence of record.

2. Assembly Processor.

Claimant also argues that the ALJ failed to meet his burden at step five in determining that Claimant could perform other work as an "assembly processor" because such job title does not exist under the DOT. (Pl.'s Br. at 5.) The Commissioner asserts that the ALJ inadvertently stated "the wrong job name" as identified by the VE and that such action "does not negate the existence of jobs [Claimant] could perform given the consistency of the VE testimony with jobs contained in the DOT." (Def.'s Br. at 7-8.) The VE testified that Claimant could "work an assembly type of position" and that there were more than 335,000 positions in the national economy and more than 11,000 in the regional economy. (Tr. at 369-70.) In his decision, the ALJ summarized the VE's testimony but inadvertently transposed the VE's identification of work in "an assembly type of position" to that of an "assembly processor." While the Claimant may be correct in stating that such title does not exist within the confines of the DOT, it is nevertheless clear that the ALJ was referring to the job of an "assembler" which is identified in the DOT. Accordingly, the Court finds that any error the ALJ may have committed in identifying an assembler position is harmless.[3]

3. Shipping and Receiving Clerk.

Finally, Claimant argues that the ALJ erred in not recognizing a conflict between the shipping and receiving clerk job as identified by the VE to be performed at the light exertional level and as identified in the DOT as performed at the medium exertional level. (Pl.'s Br. at 4-5.) The Commissioner asserts that the jobs identified by the VE were intended only as examples of the jobs

---

[3] The Court further finds that any error the ALJ may have committed in identifying work as that of an "assembly processor" is harmless because the Commissioner met his burden at step five of the sequential analysis by demonstrating that Claimant was able to perform the cashier job.

Claimant could perform. (Def.'s Br. at 8.) Furthermore, the Commissioner asserts that the VE did not cite to a specific DOT section, and therefore, Claimant cannot substantiate her assertion of a conflict. (Id.) Finally, the Commissioner asserts that the VE testified that his description of the shipping and receiving clerk job was consistent with that of the DOT. (Id.)

The VE testified that Claimant was able to perform work as a shipping/receiving clerk at the light exertional level and that more than 64,000 such jobs existed in the national economy and more than 1,600 jobs existed within the region. (Tr. at 369-70.) As the Commissioner notes, the VE did not cite a specific DOT section. Rather, the VE testified that his description of the job was consistent with that of the DOT. (Tr. at 370.) The Court finds that Claimant is essentially correct in her summary of the DOT job description. See generally, U.S. Department of Labor, Dictionary of Occupational Titles (DOT) (4th ed. 1991). The DOT provides that the shipping and receiving clerk job is performed at the medium exertional level. Id. § 222-387-050. Although the VE did not identify a specific DOT section and stated that his testimony was consistent with the DOT, it appears that a conflict exists that was not resolved by the ALJ. This job, therefore, appears to exceed Claimant's residual functional capacity as determined by the ALJ. The Regulations provide that the DOT is not the sole source of information on jobs. See 20 C.F.R. § 416.966(d) (2004). The Regulations specifically contemplate the use of Vocational Experts in complex issues. Id. § 416.966(e). As at least one Court has noted, the DOT itself has a disclaimer, noting that it provides "'composite descriptions of occupations as they may typically occur.'" Barker v. Shalala, 40 F.3d 789, 795 (6th Cir. 1994). In the instant case, the VE testified that a person with Claimant's limitations could perform the jobs identified and that this information was consistent with the DOT. Nevertheless, assuming Claimant is unable to perform the shipping or receiving clerk job, the

13

undersigned finds that the cashier and assembler jobs are within Claimant's residual functional capacity. Accordingly, any error committed by the ALJ was harmless.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Remand (Doc. No. 11.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Doc. No. 13.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED** and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: February 15, 2007.

R. Clarke VanDervort
United States Magistrate Judge